## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

CHRISTOPHER J. POTTER )
)
Plaintiff, )
)
v. ) No. 4:19-CV-2234 JAR
)
DEBBIE ECHELE, )
)
Defendant. )

### MEMORANDUM AND ORDER

This matter is before the Court upon the motion of Christopher J. Potter, an inmate in South Central Correctional Center ("SECC"), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $34.98. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $174.93. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $34.98.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## The Complaint

Plaintiff, who is currently incarcerated at Southeast Correctional Center ("SECC"), brings this action pursuant to 42 U.S.C. § 1983 against defendant Debbie Echele (Medical Director, St. Charles County Jail). Plaintiff asserts that he is suing Ms. Echele in both her individual and

-2-

official capacities for unlawful action purportedly committed during two time periods defendant was incarcerated at St. Charles County Jail.

Plaintiff asserts that he entered the St. Charles County Jail following his trial on the evening of December 17, 2018.[1] He claims that the following morning, December 18, 2018, defendant Echele "learned that that the plaintiff had returned to jail from [his] prior stay, where [he] was incarcerated from July 5, 2016 to May 31, 2018, when [he] post[ed] bond for medical related issued."

Plaintiff alleges that when defendant Echele learned of his return, she placed him in the suicide watch unit even though he told Echele that he was not suicidal. Plaintiff claims that defendant ignored his statements, and after approximately a week after he was in the first step of the suicide unit, Echele ordered that plaintiff be placed on twenty-two hour per day lockdown, which was the second step of the suicide unit. Plaintiff claims that this was done by Echele in retaliation. However, plaintiff does not articulate what Echele was purportedly retaliating against him for.

Plaintiff states that he was in the more restrictive suicide unit for approximately one month, during which time he was only allowed out of his cell two hours per day. He states that he was not allowed to go to the law library during this time period, even though he told Echele he wished to visit the law library prior to his criminal sentencing on February 15, 2019. Plaintiff states that his ability to "write legal mail other than to the St. Charles County Court house" was denied by Echele, even though she knew he had an ongoing case against defendant Echele and others in the United States District Court for the Eastern District of Missouri at that time. However, as noted below, his case at this Court had actually been dismissed prior to that date.

---

[1] The Court takes judicial notice that plaintiff was found guilty of eight counts of assault in the first degree. *See State v. Potter*, No. 1611-CR03563-1 (11th Judicial Circuit, St. Charles County Court). Plaintiff was sentenced to seven years on each count, with two counts to be served concurrently and three counts to be served consecutively, for a total term of imprisonment of twenty-one (21) years in the Missouri Department of Corrections.

Plaintiff asserts that he was cold in his cell and he was only allowed one blanket, even though he believes other inmates in the suicide unit had two blankets. He alleges that during each shift change he was subjected to strip search, even though there were cameras in his cell and the guards should have been aware he did not "have anything on [him].

Plaintiff states that even when he was allowed out of his cell for two hours each day he was "denied exercise," even in the day room. Plaintiff does not elaborate on this claim.

Plaintiff states that he filed several grievances related to his time in the suicide unit, telling defendant Echele that he believed she was treating him unfairly. Plaintiff does not indicate how this relates to a claim, although he states that "Echele continued to retaliate against me after my multiple grievances to Echele keeping me in the suicide unit." Plaintiff similarly asserts in a conclusory manner that "Echele violated my First Amendment rights to be free from retaliation by forcing mem into suicide unit and on a 22 hour and 2 hour lockdown while nobody else required such a lockdown and retaliated against me because of knowing I had filed a prior lawsuit against Echele."

Plaintiff states that he was in the suicide cells for a little over a month. He asserts that he lost his case in this Court due to his inability to correspond during his time in the suicide cell.

The Court takes judicial notice that plaintiff filed an action on January 26, 2018 pursuant to 42 U.S.C. § 1983 against defendants Debbie Echele, Nurse Jessica Richard, Nurse Theresa Martin, Sheriff Scott Lewis, Nurse Jandi Cox, Dr. Loynd and St. Charles County. *See Potter v. Echele*, No. 4:18-CV-148 CDP (E.D.Mo). His action was reviewed, pursuant to 28 U.S.C. § 1915 on April 19, 2018, and process was issued on several defendants at that time, including defendant Echele. In his lawsuit, plaintiff alleged that his Eighth Amendment rights had been violated when defendants were deliberately indifferent to his serious medical needs at St. Charles County Jail. Namely, defendant claimed that defendants withheld medical test results and that

they failed to treat what plaintiff believed to be testicular cancer. Plaintiff was released from St. Charles County Jail on or about May 25, 2018. *See Potter v. Echele*, No. 4:18-CV-148 CDP (E.D.Mo), Docket No. 27.

A Case Management Order was issued in *Potter v. Echele*, No. 4:18-CV-148 CDP (E.D.Mo) on August 14, 2018. On September 17, 2018, defendant Loynd filed a motion to enforce an order for initial disclosures, as plaintiff had not yet complied with the dates set forth in the Court's Case Management Order. The Court, on September 18, 2018, ordered plaintiff to show cause why he had failed to comply with the Case Management Order. Plaintiff responded to the Court's Order to Show Cause on October 1, 2018, indicating that he did not understand that dates contained in the Court's Case Management Order, but that he was willing to comply with the disclosures. As noted above, plaintiff was not in custody at this point in time. The Court granted plaintiff's request for a thirty (30) day extension of time to provide initial disclosures on November 9, 2018, moving the deadline to December 10, 2018. However, when he failed to provide the disclosures by December 12, 2018, the Court dismissed plaintiff's action pursuant to Federal Rule of Civil Procedure 41 on December 21, 2018. *See Potter v. Echele*, No. 4:18-CV-148 CDP (E.D.Mo), Docket No. 45.

For relief, plaintiff seeks monetary damages and injunctive relief.

## Discussion

Plaintiff brings this action pursuant to 28 U.S.C. § 1983, alleging numerous violations of his constitutional rights. Having thoroughly reviewed and liberally construed plaintiff's complaint, and for the reasons discussed below, the Court must dismiss plaintiff's official capacity claims. The Court must also dismiss the individual capacity claims against defendant Echele for unlawful conditions of confinement, denial of access to courts, violations of procedural due process, unlawful strip search, and for intentional infliction of emotional distress

- 5 -

under Missouri state law. The Court will issue process, however, on plaintiff's First Amendment retaliation claims against defendant Echele.

**A. Official Capacity Claims**

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Plaintiff alleges that Debbie Echele is employed by St. Charles County Jail. Accordingly, his official capacity claims are actually against their employer, St. Charles County.

A local governing body such as St. Charles County can be sued directly under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to prevail on this type of claim, the plaintiff must establish the county's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an

extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of St. Charles County.

First, plaintiff can show that St. Charles County had an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible...for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

Alternatively, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

- 7 -

Finally, plaintiff can assert a municipal liability claim against St. Charles County by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, there are no facts supporting the proposition that plaintiff's constitutional rights were violated due to an unconstitutional policy or custom. He also fails to present any facts indicating that St. Charles County failed to train its employees. Instead, plaintiff's complaint focuses on single instances that purportedly occurred against him at St. Charles County Jail between December 18, 2018 and mid-January 2019. The Court, however, cannot infer the existence of an unconstitutional policy or custom from single and distinct occurrences. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991). As such, plaintiff's official capacity claims against Debbie Echele must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

**B. Individual Capacity Claims Against Defendant Echele**

Plaintiff's individual capacity claims against Debbie Echele regarding his purported unlawful conditions of confinement, denial of access to courts, violations of procedural due process, unlawful strip search, and for intentional infliction of emotional distress fail to state a

- 8 -

claim for relief. However, the Court will issue process on plaintiff's claims for First Amendment retaliation against defendant Echele.

## 1. Unlawful Conditions of Confinement Claims

Conditions of confinement "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To that end, prison officials are required to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998). In order to allege an Eighth Amendment violation, a prisoner must prove that the defendant's conduct rose to the level of a constitutional violation, "by depriving the plaintiff of the minimal civilized measure of life's necessities." *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). The conduct of the defendant must also reflect a subjective state of mind that evinces deliberate indifference to the prisoner's health or safety. *Id.*

Plaintiff's allegations against defendant Echele regarding inadequate bedding fails to state a claim upon which relief may be granted. There is no absolute Eight Amendment right not to be put in a cell without clothing or bedding. *Williams v. Delo*, 49 F.3d 442, 445-46 (8th Cir. 1995). However, the length of time an inmate spends in such a condition is a factor in determining whether there has been a constitutional violation. *See Goldman v. Forbus*, 17 Fed. Appx. 487, 488 (8th Cir. 2001) (stating there was no constitutional violation in plaintiff's two nights spent on a mattress on the floor near a toilet, since the stay was brief, he was allowed to leave the cell during the day, and he did not suffer any physical harm); and *Blackwell v. Selig*, 26 Fed. Appx. 591, 593 (8th Cir. 2001) (stating that plaintiff "sleeping on the floor on a four-inch thick mattress for five nights did not amount to an unconstitutional condition of confinement").

Here, plaintiff alleges that he had a mattress and a blanket, but that he did not have two blankets like the other prisoners in the suicide cells had. Although he states his cell was cold, his spent only approximately a month in his cell with clothing and a mattress and a blanket. Additionally, he was allowed outside of his cell each day for two hours. Given these facts, the Court cannot say that a lack of an extra blanket is an Eighth Amendment violation stating an unconstitutional condition of confinement.

Plaintiff also alleges that he wanted to "call his girlfriend on the phone," be he was denied this privilege. The Court cannot state that loss of the privilege of the phone for thirty days, in addition to a cold cell and only being provided one blanket instead of two, states an Eighth Amendment violation. *See Ware v. Morrison*, 276 F.3d 385, 387 (8th Cir. 2002) (stating that suspension of plaintiff's visitation privileges did "not fall outside the expected parameters of incarceration").

Last plaintiff alleges he was denied proper exercise equipment and space to exercise while in his suicide cell. However, plaintiff was released from his cell two hours per day. Nonetheless, plaintiff does not indicate where he was taken during those two hours each day.

In considering an alleged deprivation of adequate exercise, courts must consider several factors including: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement. *Wishon v. Gammon,* 978 F.2d 446, 449 (8th Cir. 1992); *see Peterkin v. Jeffes*, 855 F.2d 1021, 1028-29 (3d Cir.1988) (two hours per day of exercise not considered cruel and unusual punishment); *Ruiz v. Estelle,* 679 F.2d 1115, 1152 (5th Cir.1982) (one hour of exercise per day upheld as not violating the Eighth Amendment). The act of limiting exercise, by itself, is not enough to allege a constitutional violation. *Wishon,* 978 F.2d at 449. Given that plaintiff was only confined for a month and allowed out of his cell for two hours per day, the Court cannot say that he was deprived of

- 10 -

adequate exercise such that his conditions of confinement establish an Eighth Amendment violation.

## 2. Denial of Access to Courts Claims

Plaintiff alleges that he was denied the ability to go to the law library while he was on suicide watch until approximately mid-January 2019. Plaintiff states he was also denied access to "write legal mail."[2] Although plaintiff does not indicate to whom he wanted to write to except for this Court relating to his prior lawsuit against Echele.

It is well settled that inmates have a right to receive mail, but that right may be limited by prison regulations that are reasonably related to a legitimate penological interest. *Weiler v. Purkett*, 137 F.3d 1047, 1050 (8th Cir. 1998). *See also Griffin v. Lombardi*, 946 F.2d 604, 607 (8th Cir. 1991) (stating that prison inmates have a recognized First Amendment interest in receiving mail, but that prisoners are also subject to the valid regulations of a prison).

Here, plaintiff simply states that he was denied the ability to write legal mail to this Court for approximately one month. However, as noted above, plaintiff did not have an ongoing civil action in this Court while he was in the suicide unit at St. Charles County Jail. His prior lawsuit against defendant Echele and several other defendants had been dismissed by this Court on December 21, 2018 after plaintiff failed to file his initial disclosures with defendants on or about December 12, 2018. *See Potter v. Echele*, No. 4:18-CV-148 CDP (E.D.Mo), Docket No. 45. Thus, plaintiff had failed to comply with the District Court's Order relative to his initial disclosures prior to entering the St. Charles County Jail on December 18, 2018, and he was not in need of the law library at that time.

In *Bounds v. Smith*, the Supreme Court held that the right of access to the courts requires that inmates be provided adequate law libraries or adequate assistance from persons trained in

---

[2] Mail to and from the Court is not "legal mail." *See Harrod v. Halford*, 773 F.2d 234, 236 (8th Cir. 1985).

the law. 430 U.S. 817. Following *Bounds*, the Supreme Court held, based on principles of standing, that an inmate alleging a *Bounds* violation must show an actual injury:

> Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary. Insofar as the right vindicated by *Bounds* is concerned, "meaningful access to the courts is the touchstone," and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.

*Lewis v. Casey*, 518 U.S. 343, 351 (1996) (internal citations omitted).

The Eighth Circuit has recognized that, when bringing an access to courts claim, it is insufficient to merely allege a denial of access to a law library or other resources, even if the denial is systemic. *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (*per curiam*) (citing *Lewis*, 518 U.S. 343). Instead, the plaintiff must plead (and ultimately prove) that the lack of the library or other resource deprived him of some specific opportunity to defend himself, or advance a viable legal claim, in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate constitutional rights. *Id.* Speculation that injuries might occur or could have occurred is insufficient. *See Hartsfield v. Nichols*, 511 F.3d 826, 833 (8th Cir. 2008) ("[a]bsent an articulation of how the alleged wrongful conduct actually blocked [the prisoner's] access to filing a complaint, or caused a filed complaint to be deficient, [the prisoner's] alleged injuries are merely speculative").

In the case at bar, plaintiff pleads no facts tending to show that the lack access to a law library for the approximate month he was confined to a suicide cell impeded him from the ability to defend himself in a criminal or civil action. As stated above, his civil action in this Court against Echele and other defendants was already concluded, and he was not sentenced in his

criminal action until February 8, 2019. *See State v. Potter,* No. 1611-CR03563-1 (11th Judicial Circuit, St. Charles County Court).

### 3. Lack of Procedural Due Process Claim

Plaintiff asserts he was denied due process when he was placed in suicide lock up for approximately thirty days, from December 18, 2018 to mid-January 2019 at St. Charles County Jail.

As to plaintiff's individual capacity claims against defendants, prisoners may claim the protections of the Due Process Clause, and may not be deprived of life, liberty, or property without due process of law. *Haines v. Kerner,* 404 U.S. 519 (1972). However, a procedural due process claim "is cognizable only if there is a recognized liberty or property interest at stake," and courts "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest." *Beaulieu v. Ludeman,* 690 F.3d 1017, 1047 (8th Cir. 2012) (internal citations omitted).

The Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 4 72, 484 (1995); *see also Phillips v. Norris,* 320 F.3d 844, 846-47 (8th Cir. 2003). Therefore, in the case at bar, this Court needs reach the question of what process was due only if plaintiff's allegations demonstrate that his placement in disciplinary segregation, administrative segregation, and his temporary visitation created an atypical and significant hardship under *Sandin. See Beaulieu,* 690 F.3d at 1047; *see also Portley-El v. Brill,* 288 F.3d 1063, 1065 (8th Cir. 2002) (recognizing that the Eighth Circuit has consistently held that disciplinary segregation is not an atypical and significant hardship under *Sandin).* Also, plaintiff cannot demonstrate that 30 days in a suicide cell was unduly long. *See Kennedy v. Blankenship,* 100 F.3d 640, 641-42 (8th Cir. 1996) (30

- 13 -

days in punitive isolation was not atypical and significant); *Orr v. Larkins,* 610 F.3d 1032, 1033-34 (8th Cir. 2010) (nine months in disciplinary segregation was not atypical and significant).

Plaintiff also alleges that his phone privileges were temporarily restricted at some point in time. Plaintiff fails to allege the duration of these restrictions, but he does not allege any facts permitting the conclusion that these restrictions imposed an atypical and significant hardship under *Sandin.* To state a claim under § 1983 for unconstitutional placement in administrative segregation, a prisoner "must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *Phillips*, 320 F.3d at 847.

Although plaintiff complains that he was only given one blanket instead of two, that his cell was cold, he was confined to his cell for twenty-two hours per day and let out of the cell for two hours per day, and additionally he wasn't allowed to mail letters to the court, he fails to compare this to ordinary life in other prison cells such that he can show an atypical or significant hardship. For these reasons the Court is unable to state that plaintiff has alleged a procedural due process claim relative to his approximate one month stay in a suicide cell between December and January 2018-19.

**4.  Unlawful Strip Search Claims**

Plaintiff alleges that during his time in the suicide lock up, at each shift change, he was strip searched. He complains about the need for strip searches even though he was observed by a camera in his cell.

When it comes to strip searches, the Fourth Amendment only prohibits unreasonable searches. *Bell v. Wolfish,* 441 U.S. 520, 558 (1979). The determination of reasonableness requires a balancing of the need for the search against the invasion of personal rights. *Id.* "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the

- 14 -

justification for initiating it, and the place in which it is conducted. *Id.*; *see also Franklin v. Lockhart*, 883 F.2d 654, 656 (8th Cir. 1989) (finding that the security concerns articulated by prison officials justified the intrusiveness of a visual body cavity search).

Here, plaintiff has alleged that he was strip searched at each shift change for approximately one month, but only during his stay in the suicide cell. However, plaintiff has failed to allege any facts suggesting harm. As noted above, these types of searches are not per se violations of the Fourth Amendment. *See Bell*, 441 U.S. at 558; *Lockhart*, 883 F.2d at 656. Rather, there is a balancing between the need for the search and the intrusion they entail. *Id.* Plaintiff has not alleged any facts to the effect that the strip searches were unreasonable. For instance, he has not alleged that he was singled out for these searches. He has not claimed that these searches were in violation of any of the jail's stated policies. He has not alleged that these searches were undertaken against him as some sort of retaliation. He has also not alleged the the manner in which the search is conducted was in some way degrading or intrusive. Moreover, plaintiff has not named as defendants in this action any of the correctional officers who performed the searches, such that he is alleging that the searches, themselves, were undertaken in an unconstitutional manner.

A complaint must contain factual matter that, when accepted as true, states a claim for relief that is plausible on its face. *Ashcroft*, 556 U.S. at 678. There is facial plausibility when the factual content of a claim allows a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The factual matter in plaintiff's complaint, merely that strip searches occurred when a person was in a suicide cell in St. Charles County, is not enough to state a claim. These types of searches are not automatically unconstitutional. Rather, there has to be some allegation of unreasonableness. Plaintiff does not provide any such facts, and the Court

is not required to assume them, or construct a legal theory for assumed facts that have not been pleaded. Therefore, this claim must be dismissed.

## 5. First Amendment Retaliation Claims

Plaintiff asserts that defendant Echele retaliated against him in violation of the First Amendment in two ways. He claims that Echele placed him in the suicide cell when he returned to St. Charles County Jail on December 17, 2018, because he had filed a prior lawsuit against her in this Court. He additionally claims that after being placed in a suicide cell, he filed grievances against Echele and she retaliated against him by keeping him in the suicide unit even though he was not suicidal.

To state a prima facie case for First Amendment retaliation, plaintiff must allege that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against plaintiff that would chill a person of ordinary firmness from engaging in that activity. *See Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004), *cert. denied*, 546 U.S. 860 (2005).

Filing grievances and lawsuits is no doubt protected activity. And plaintiff alleges that defendant Echele retaliated against him by placing him in a suicide cell for approximately thirty days for engaging in that protected activity. The question, therefore, becomes whether defendant had a valid reason for placing plaintiff in a suicide cell in St. Charles County Jail. Given this stage of the litigation, and the fact that plaintiff has pled that he was not suicidal on the date he entered the Jail, the Court must defer to plaintiff's pleading. As such, the Court will issue process on plaintiff's First Amendment retaliation claims against defendant Echele.

## 6. Intentional Infliction of Emotional Distress Claim

- 16 -

Plaintiff states in his complaint that he was subjected to emotional distress by defendant Echele when he was placed in a suicide cell for approximately one month at St. Charles County Jail and not allowed phone calls with his girlfriend or books to read.

Under Missouri law, the tort of intentional infliction of emotional distress has four elements: (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress. *See Polk v. Inroads/St. Louis, Inc.*, 951 S.W.2d 646, 648 (Mo. Ct. App. 1997). "Although case law does not provide us with a precise definition of extreme and outrageous, the test adopted by Missouri courts for actionable conduct is that the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotations omitted). Additionally, the conduct must be "intended *only* to causes extreme emotional distress to the victim." *See Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (emphasis added).

Here, plaintiff has not alleged, and the facts do not support, that defendants' sole purpose in her conduct was to cause emotional distress to plaintiff. Rather, plaintiff has alleged that he was sentenced to twenty-one years' imprisonment on December 17, 2018, and he was returned to the St. Charles County Jail after that time, at which time he was immediately placed in a suicide cell for thirty days and subjected to supervision in one of those cells. He has not alleged that others placed on suicide watch were allowed books in their cells or visits or phone calls during their time on suicide watch. Given these pleadings, the Court cannot say that he has pled that defendant Echele was intentionally causing him emotional distress.

Although defendant makes much of defendant Echele's alleged negative intent in placing him in a suicide cell for a short time, the Court does not find defendants' conduct so "outrageous in character" and "extreme in degree, as to go beyond all possible bounds of decency" given

- 17 -

plaintiff's sentencing news he received on December 17, 2018. For these reasons, the Court cannot find that plaintiff's allegations plausibly state a claim for intentional infliction of emotional distress under Missouri state law.

### Plaintiff's Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. This motion will be denied at this time.

"A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). A district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim...and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips*, 437 F.3d at 794.

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be unduly complex. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #3] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $34.98 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance

- 18 -

payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to plaintiff's claims under 42 U.S.C. § 1983 alleging defendant Debbie Echele unlawfully retaliated against plaintiff in violation of his First Amendment rights. These claims shall issue against defendant Echele in her individual capacity only. Defendant Echele shall be served at St. Charles County Jail with summons.

**IT IS FURTHER ORDERED** that plaintiff's claims for official capacity against defendant Echele are **DISMISSED**. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's claims alleging unlawful conditions of confinement, violations of his access to courts, unlawful strip searches, denial of procedural due process and intentional infliction of emotional distress are **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #2] is **DENIED at this time.**

**IT IS FURTHER ORDERED** that plaintiff's motion for entry of default [Doc. #6] is **DENIED** without prejudice as the Court has not effectuated service on defendant as of this time.

**IT IS FURTHER ORDERED** that an appeal of this Partial Order of Dismissal would not be taken in good faith.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 23rd day of March, 2020

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE