UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER POTTER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  No. 4:19-CV-02234 JAR |
| DEBBIE ECHELE, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

Plaintiff Christopher Potter ("Plaintiff"), proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 for First Amendment retaliation against Defendant Debbie Echele, Medical Director, St. Charles County Jail, in her individual capacity.[1] This matter is now before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 44). Plaintiff filed a response (Doc. No. 48) and Defendant replied (Doc. No. 49). The motion is therefore fully briefed and ready for disposition.

**Background**

According to the complaint, Plaintiff was confined in the St. Charles County Adult Correctional Facility (the "Jail") from July 5, 2016 to May 31, 2018, and again from December 17, 2018 until he was transferred to the custody of the Missouri Department of Corrections on February 25, 2019. Plaintiff alleges Defendant retaliated against him in violation of the First Amendment by placing him in the Suicide Prevention Housing Unit when he returned to the Jail

---

[1] In a memorandum and order entered on March 23, 2020, the Court dismissed all claims alleged in Plaintiff's complaint except a First Amendment retaliation claim alleged against Defendant in her individual capacity. (Doc. Nos. 7, 8).

1

on December 17, 2018, because he had filed a prior lawsuit against her in this Court.[2] He further alleges that after being placed in the Suicide Prevention Housing Unit, he filed grievances against Defendant and that she retaliated against him by keeping him there even though he was not suicidal. Defendant moves for summary judgment on the following grounds: (1) Plaintiff's transfer to the Suicide Prevention Housing Unit was not impermissible retaliation; and (2) Defendant is entitled to qualified immunity.

**Legal standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988). "[A] nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." Nationwide Prop. & Cas. Ins. Co. v. Faircloth, 845 F.3d 378, 382 (8th Cir. 2016) (citations omitted). Self-serving, conclusory statements without support are insufficient to defeat summary judgment. Armour & Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

---

[2] On January 26, 2018, Plaintiff filed a complaint in this Court pursuant to 42 U.S.C. § 1983 alleging that during his confinement in the Jail from July 5, 2016 to May 31, 2018, Defendant, among others, were deliberately indifferent to his serious medical needs. See Potter v. Echele, No. 4:18-CV-148 CDP (E.D. Mo.). The Court dismissed the case with prejudice on December 21, 2018 for Plaintiff's failure to comply with discovery related orders and provide initial disclosures. (Doc. Nos. 44, 45).

As an initial matter, Plaintiff has not provided a statement of material facts as to which he contends a genuine issue exists, nor one that properly conforms to the requirements of the Local Rules and the Federal Rules of Civil Procedure. Local Rule 4.01(E) provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

Although Plaintiff has admitted or denied each statement in separately numbered paragraphs, he has not included in his response "specific references to portions of the record, where available, upon which the opposing party relies." E.D. Mo. L.R. 4.01(E). Plaintiff's status as a *pro se* prisoner does not excuse him from responding to Defendant's motion "with specific factual support for his claims to avoid summary judgment," or from complying with local rules. Beck v. Skon, 253 F.3d 330, 333 (8th Cir. 2001). Again, self-serving, conclusory statements without support are insufficient to defeat summary judgment. Armour & Co., 2 F.3d at 279. As a result, Plaintiff is deemed to have admitted Defendant's statement of material facts for purposes of the pending motion for summary judgment. Turner v. Shinseki, No. 4:08-CV-1910 CAS, 2010 WL 2555114, at *2 (E.D. Mo. Jun. 22, 2010) (citing Deichmann v. Boeing Co., 36 F. Supp.2d 1166, 1168 (E.D. Mo. 1999), *aff'd* 232 F.3d 907 (8th Cir. 2000), *cert. denied*, 531 U.S. 877)).

3

However, Plaintiff's failure to respond properly to Defendant's motion does not mean summary judgment should be automatically granted in favor of Defendant. Even if the facts as alleged by Defendant are not in dispute, those facts still must establish they are entitled to judgment as a matter of law. Cross v. MHM Corr. Servs., Inc., No. 4:11-CV-1544 TIA, 2014 WL 5385113, at *3 (E.D. Mo. Oct. 10, 2014).

**Facts**

Upon careful review, the Court finds the following material facts, as stated in Defendant's Statement of Uncontroverted Material Facts ("SOF") (Doc. No. 45), are fully supported by the evidence cited and have not been controverted by Plaintiff with admissible evidence of his own.

Pursuant to St. Charles County Department of Corrections suicide prevention protocols, all inmates are given an initial mental health assessment at intake to evaluate their risk of self-harm. (SOF at ¶¶ 5, 6). Plaintiff's initial mental health assessment was performed on December 18, 2018 by Mental Health Counselor Dona Schaefer, who determined that Plaintiff was not at risk of self-harm. (SOF at ¶¶ 7, 8). After leaving the counseling room, Plaintiff approached Corporal Michael Crane and stated, "I am not feeling good." When Crane asked for clarification, Plaintiff stated, "I am feeling suicidal." (SOF at ¶¶ 9-10). When asked about his denial of suicidal ideation during his initial mental health assessment, Plaintiff told Defendant, "I lied, I'm feeling suicidal." (SOF at ¶ 11).

Plaintiff was placed on suicide prevention protocols and transferred to the St. Charles County Suicide Prevention Housing Unit, also known as Housing Unit A. (SOF at ¶ 12). Plaintiff met regularly with Counselor Schaefer, who would perform suicide risk assessments while he was housed in Housing Unit A. (SOF at ¶ 13). Schaefer conducted mental health assessments of

Plaintiff on December 27, 2018; January 3, 2019; January 9, 2019; and January 22, 2019. (SOF at ¶ 14).

At his December 27, 2018 assessment, Plaintiff told Schaefer that he was feeling sad and depressed; that he had attempted suicide several times, and most recently three months prior; that if he was out of the Jail, he would attempt suicide by taking NyQuil and either hanging himself or jumping in front of a moving train; and that "If I go to prison, I'll do it," meaning commit suicide. (SOF at ¶¶ 15-19). When asked about his denial of suicidal ideation during his initial mental health assessment on December 18, 2018, Plaintiff stated:

> It just hit me. I felt my life was over with. I was scared of trial. Part of me wanted to end it. I don't think prison is fair to me because I had a job, a girlfriend out there. I was doing better, just spending time with my girlfriend. I feel better in [Housing Unit A]. It is a better environment for me because the officer is there all the time. I fear for my safety on the regular pod. I'm afraid the thoughts of suicide will come back up.

(SOF at ¶ 20). Following Plaintiff's December 27, 2018 suicide risk assessment, Schaefer recommended that Plaintiff remain in Housing Unit A. (SOF at ¶ 21).

Plaintiff continued to complain of depression at his January 3, 2019 suicide risk assessment, and, when questioned by Schafer regarding suicidal thoughts, answered, "The thoughts just keep coming every day. It's not something I want to do. It would be hard on my family." (SOF at ¶ 22). Plaintiff stated, "I know suicide is wrong, and I don't know if I could go through with it, but I'm not sure I want to live with what I'm facing." (SOF at ¶¶ 22-24). Following Plaintiff's January 3, 2019 assessment, Schaefer recommended that Plaintiff remain in Housing Unit A. (SOF at ¶ 25).

On January 9, 2019, Plaintiff told Schaefer his depression "is getting worse every day," that he wished to die and that he had tried to cause his death by refusing food. Plaintiff stated, "When I get out of here, I do think I'm going to kill myself." When questioned about feelings of

hopelessness, Plaintiff answered, "What's the use of living? The prosecution wants to give me 80 years."  (SOF at ¶¶ 26-30). Schaefer again recommended that Plaintiff remain in Housing Unit A.  (SOF at ¶ 31).

At his January 22, 2019 suicide risk assessment, Plaintiff reported he was feeling better. He stated that his "situation isn't that bad," that at most he faced a ten-year sentence, and could "always appeal [his] case." He further stated there is "too much going well for me to kill myself, and that he [did]n't want to ever take that route in life," referring to killing himself. When questioned about feelings of depression, Plaintiff responded, "I don't know if I'm really depressed or not. I just miss my girlfriend." (SOF at ¶¶ 32-38). Schaefer recommended Plaintiff be released to general population and, at Defendant's direction, Plaintiff was released on January 22, 2019. (SOF at ¶¶ 39-40).

Plaintiff filed a medical grievance on January 7, 2019 stating that he was refusing meals as a method of self-harm, to-wit, "[I] can 1 day be sleeping but actually be passed away.  [T]hat is my choice. Please respect that."  (SOF at ¶¶ 43-44). On January 8, 2019, Plaintiff filed another medical grievance stating that he was refusing to eat ("If you want me to eat, have the judge put surety on my bond."). (SOF at ¶ 45). In another medical grievance filed January 10, 2019, Plaintiff stated that he "was feeling suicidal before coming back to jail" and requesting "professional help" in dealing with his suicidal ideations. (SOF at ¶¶ 41-42).

**Discussion**

**(1)  No impermissible retaliation**

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions." Peterson v. Kopp, 754 F.3d 594, 602 (8th Cir. 2014) (quoting Hartman v. Moore, 547 U.S. 250, 256 (2006)). To succeed, a plaintiff alleging a First Amendment retaliation

6

claim must prove that "(1) [the plaintiff] engaged in a protected activity, (2) the government official took adverse action against [the plaintiff] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Id. (internal quotation marks omitted); accord Quraishi v. St. Charles County, 986 F.3d 831, 837 (8th Cir. 2021); Molina v. City of St. Louis, No. 4:17-CV-2498 AGF, 2021 WL 1222432, at *6 (E.D. Mo. Mar. 31, 2021) (citation omitted).

With respect to the third prong, the plaintiff must demonstrate that the retaliatory motive was a "substantial factor" of the adverse action. Peterson, 754 F.3d at 602 (citing Baribeau v. City of Minneapolis, 596 F.3d 465, 481 (8th Cir. 2010)). In other words, Plaintiff must show he would not have suffered the adverse action but for his protected activity. Id. The causal connection (i.e., retaliatory motive) is generally a jury question, unless it is so free from doubt as to justify taking it from the jury. Id. at 603; Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004) (quoting Ricketts v. Columbia, 36 F.3d 775, 779 (8th Cir. 1994)).

Plaintiff claims Defendant retaliated against him for filing grievances and a lawsuit by placing him in a suicide unit for approximately thirty days. He points to the fact that his initial mental health assessment on December 18, 2018 determined he was not at risk for self-harm. Defendant argues that Plaintiff's claim fails as a matter of law because he has presented no evidence establishing a retaliatory motive for his transfer to Housing Unit A. He simply presumes retaliation based on nothing more than conclusory statements.

It is undisputed that Plaintiff was determined to be a suicide risk, based on four mental health assessments conducted over a period of several weeks pursuant to St. Charles County Department of Corrections suicide prevention protocols. In contrast to these undisputed facts,

Plaintiff points to no evidence suggesting Defendant was motivated by his earlier lawsuit and grievances, rather than by his mental health status.

In short, Plaintiff has not shown that "but for" the filing of his earlier lawsuit and medical grievances, he would not have been placed in Housing Unit A. Moreover, once Plaintiff reported he was feeling better and assessed at low risk for suicidal thoughts and behaviors, he was released to the general population at Defendant's direction. In sum, even when the facts are viewed in the light most favorable to Plaintiff, there is insufficient evidence from which a reasonable jury could find that Defendant impermissibly retaliated against him for engaging in protected activity. Therefore, there are no genuine issues of material fact as to whether Defendant violated Plaintiff's First Amendment rights by placing him in Housing Unit A, and Defendant is entitled to summary judgment.

**(2) Qualified immunity**

Defendant further argues she is entitled to summary judgment based on qualified immunity because Plaintiff has failed to show that the actual motivating factor for his placement in Housing Unit A was impermissible retaliation. An official sued under section 1983 is entitled to summary judgment based on qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation. Capps v. Olson, 780 F.3d 879, 884 (8th Cir. 2015) (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Kulkay v. Roy, 847 F.3d 637, 642 (8th Cir. 2017) (quoting Pearson, 555 U.S. at 236). Because an official is entitled to qualified

8

immunity unless both prongs are satisfied, the analysis ends if either of the two is not met. See id.

As discussed above, the Court has found that the facts, even when viewed in the light most favorable to Plaintiff, do not establish a plausible claim for First Amendment retaliation. If no constitutional violation occurred, the evaluation ends there. Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003) ("Without the requisite showing of a constitutional violation, summary judgment is proper because [plaintiff] has failed to establish the existence of an essential element of [his] case."). The Court need not proceed to the second prong of the qualified immunity analysis to determine whether the alleged constitutional violation was also clearly established at the time in question. See Kulkay, 847 F.3d at 645–46 (citing Ransom v. Grisafe, 790 F.3d 804, 812 n.4 (8th Cir. 2015)); Fields v. Abbott, 652 F.3d 886, 894 (8th Cir. 2011)). Defendant is therefore entitled to qualified immunity on Plaintiff's retaliation claim.

**Conclusion**

The evidence before the Court, including Plaintiff's complaint, shows that Defendant's alleged conduct did not amount to a constitutional violation, and no genuine issue of material fact exists for trial. Accordingly, both under the standards for qualified immunity and on the merits, Defendant is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [43] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Jury Trial [50] is **DENIED as moot.**

A separate Judgment will accompany this Memorandum and Order.

Dated this 2nd day of November, 2021.

                                                                                              _____
                                                                                              **JOHN A. ROSS**
                                                                                              **UNITED STATES DISTRICT JUDGE**